## FREDERICK F. WHITE

v.

## CATHARINE RUSSELL et al.

79 155
51a 639
79 155
71a 495

1. CREDITOR'S BILL—*by whom may be filed against estate of deceased debtor—administration of estates in equity.* Where a debtor, in his lifetime, makes a fraudulent conveyance to hinder or delay his creditors, such conveyance, although void as to creditors, is binding on his heirs and representatives. Neither his heirs, executors or administrators can maintain a bill to set aside the conveyance, as it is binding upon them; hence, the only mode of reaching such property is by a bill, filed by one or more of the creditors of the estate; and in such case, a court of equity will, it seems, entertain such a bill, and subject the property to the payment of debts.

2. Where, however, there is no such fraud, it is for the executor or administrator alone to proceed to subject the lands of the deceased to the payment of debts; and a creditor having proved his claim can not file his bill for the sale of real estate for its payment. Equity will not, on the application of one or more of the creditors, withdraw the administration of estates from the probate court, where it has been placed by the statute, nor will it withdraw a part of the assets, unless there are prior or superior liens against a portion of the property.

3. But where there is an equitable fund, that should be applied to the payment of all or a portion of the debts which can not be reached by the executor or administrator, equity will, at the instance of creditors entitled to participate in the fund, seize upon it, and apply it to those equitably entitled to it.

4. SAME—*by surviving partner, to reach an equitable fund of deceased partner for debt due the firm.* Where one member of an insolvent firm, who was also personally insolvent, appropriated the means of the firm to the purchase of real estate, and for the purpose of hindering and delaying his creditors had the property thus purchased conveyed to his wife, and then died, the surviving partner proved up against his estate, and had allowed in the probate court, the amount of the indebtedness due from the deceased to the firm, and also an individual indebtedness from the deceased to the surviving partner: *Held,* on a bill filed by the surviving partner, that he was entitled to have the property subjected to the payment of these claims.

5. SAME—*application of the fund.* Where a surviving partner of a firm files a bill against the administrator, widow and heirs of his deceased partner, to subject an equitable fund to the payment of the claim

of the firm against the estate, the administrator can apply to the court to have the money paid directly to the firm creditors who are entitled to participate in its distribution, and thus secure the estate against liability to again pay the firm creditors.

APPEAL from the Circuit Court of Cook county ; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Mr. N. B. HARRISON, for the appellant.

Messrs. ROSENTHAL & PENCE, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The bill in this case alleges that appellant and J. V. R. Rossman were in partnership in business ; that appellant had an excess of capital in the firm ; that the firm was insolvent, and that Rossman died insolvent, and his estate is in that condition ; that Rossman made a will, devising his estate, in equal parts. to his wife and his brother, James R. ; that Francis M. Corby had administered upon his estate, and in due course of administration appellant, as surviving partner. presented and proved the claim of the late firm in the probate court, where he was allowed $2746.58 ; that he also proved his individual claim, and was allowed $587.37 against the estate ; that the assets of the estate do not exceed $3069.30, and that $1530 thereof had been set off to the widow ; that the aggregate of the demands against the estate allowed by the probate court amounts to $4060.20 ; that in May, 1872, Rossman, then being insolvent, purchased a lot of ground in the city of Chicago, for the sum of $3050, and paid on the same money of the firm, $2050, and had the land conveyed to his wife, for the reason, he assigned, that he was largely insolvent, and by having the lot so conveyed he would be able to retain a home from his creditors ; that he and his wife gave their note and a mortgage on the same for $1000, to secure the remainder of the purchase money ; that his wife died about the 7th of September, 1873 ; that before her death

she made a will, and devised this property to her mother, Catharine Russell, who has been in the receipt of the rents and profits arising from the same; that Catharine Russell has pretended to convey the same to Wm. M. Case, but she has received no consideration therefor; that she only made such conveyance to cloud the title to the lot; that no portion of the money paid for the lot had been furnished by or belonged to Mrs. Rossman; that she held the property in trust for Rossman's creditors—all of which Catharine Russell and Case well knew; that the property is subject to the payment of the debts of the estate of Rossman.

These are the material facts set out in the bill. Defendants filed a demurrer, which was sustained by the court, and the bill was dismissed, and complainant appeals.

The facts presented by this bill, if true, and the demurrer admits them, entitle appellant to relief. They show a fraud upon the creditors of the firm, and upon the creditors of the estate of Rossman, deceased. Whilst insolvent, and for the purpose of placing this property beyond the reach of creditors, he wrongfully withdrew money belonging to the firm, which is insolvent, and purchased the lot, and had it conveyed to his wife. This was a fraud on creditors that equity can not sanction. It is immoral, unjust, and highly inequitable. It is so to the extent that it would so strike the mind of all fair thinking men. It was an unjust appropriation of funds in his hands, that should have been held for and paid to his creditors. As charged in the bill, it was contrived to hinder, delay and defraud his creditors, and can not be sanctioned or sustained.

It is the settled practice of courts of equity to afford relief in favor of creditors, in such cases, when they have first exhausted their legal remedies without obtaining satisfaction of their debts. This is usually proved by a judgment and an execution returned *nulla bona*. That is held to rebut all presumption that the legal remedy would be availing to the creditor. But there are cases in which other proof will suf-

fice, as, when the debtor dies and the claim is probated and allowed against the estate, and it is shown to be insolvent, it is held that equity will take jurisdiction to remove fraudulent conveyances, and subject property to the payment of the debt. *McDowell* v. *Cochran*, 11 Ill. 31, *Bay* v. *Cook*, 31 Ill. 336, and a number of other cases in this court, establish the practice. The law not permitting the creditor of an estate, on recovering judgment against the administrator or having his claim allowed, to have an execution, it has been held that proof of the allowance of the claim and the insolvency of the estate will be regarded as an exhaustion of the creditor's legal remedy, and will authorize a court of chancery to proceed to hear and afford relief. The allegations of the bill are, in this respect, sufficient.

It is, however, urged, that as the claim had been allowed against the estate, an application by the administrator was the only mode by which Rossman's interest in the land could be reached; that creditors have no such power. The case of *Le Moyne* v. *Quimby*, 70 Ill. 399, it is claimed, announces the rule, and other cases in this court are referred to for the same purpose. The cases referred to announce that the proceeding for the sale of real estate to pay debts, as a general rule, must be by the administrator. But it has its limitations, as, where a debtor, in his lifetime, makes a fraudulent conveyance to hinder or delay his creditors, such a conveyance, although void as to creditors, is binding on his heirs and representatives. Neither his heirs, executors nor his administrators can maintain a bill to set aside the conveyance, as it is binding on them. This being true, the only mode of reaching such property is by a bill, filed by one or more of the creditors of the estate. Were the courts to deny such a remedy, then the unscrupulous debtor would thus be able to elude his creditors, and effectually consummate the fraud.

When, however, there is no such fraud, it is for the executor or the administrator alone to proceed to subject the lands of deceased to the payment of his debts. In such a case, a

creditor having proved his claim, can not file his bill for the sale of real estate for its payment. That, when necessary, must be done by the executor or administrator. Equity, on the application of one or more of the creditors, will not withdraw the administration of estates from the probate courts, where it has been placed by the statute, nor will it withdraw a part of the assets, unless there are prior and superior liens against a portion of the property. But where there is an equitable fund that should be applied to the payment of all or a portion of the debts, which can not be reached by the executor or administrator, then equity will, at the instance of creditors entitled to participate in the fund, seize upon it, and apply it to those equitably entitled to it.

The case of *Le Moyne* v. *Quimby,* was where there was no impediment in the way of the administrator to prevent him from obtaining an order for the sale of the land, and all of the interest which deceased held in it, and a creditor intervened to prevent its sale until outstanding titles could be settled, and it was held that the creditor could not so intermeddle ; that the administration of estates could not be thus interfered with, although the administrator had no power to file a bill to settle the title before the land should be sold. There was no question of fraudulent conveyances or fraudulent trusts created by the deceased, as there is in this case, and in that consists the broad distinction between the cases. The bill, in this case, therefore, presented a case which, if the facts are true, entitled appellant to have the property subjected to sale for the payment of his claim ; but whether other creditors may participate in the fund is not presented by this record, and will not, therefore, be discussed.

It is next urged, that it appears, from the bill, that appellant is insolvent, and that it would be improper to intrust him with the money that would arise from the sale of this real estate, as his claim should be distributed among the creditors of the firm. The administrator, being a party to the suit, and being charged with the interest of all the creditors

and the heirs, if he believes that the fund would not be safe in the hands of appellant, can apply to the court to have the money paid directly to the firm creditors who are entitled to participate in its distribution, and thus secure the estate against liability to again pay the firm creditors. Had Rossman been still living, appellant could undeniably have filed a bill for an account, and to subject this property to the payment of such sum as should have been found due him or the firm on the accounting, and we apprehend nothing has since occurred to prevent his maintaining his suit. But in such a proceeding, Rossman, on a proper showing, could have had a receiver appointed, or the money paid by the master directly to the firm creditors. So in this case, the administrator may, on a proper showing, have the money applied directly to those who may be shown to be entitled.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*